IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Katharine I. Butler, Marvin Heller, Willie King, Jr., and Josette McDaniel, | Case No.: 3:10-cv-00794-CMC-CHH-JFA |
| Plaintiffs, | |
| | **PLAINTIFFS' MEMORANDUM** |
| v. | |
| City of Columbia, South Carolina, | |
| Defendant. | |

## BACKGROUND

This Court has asked the parties to address the appropriate standards for issuance of a Temporary Restraining Order in the context of a Section 5 preclearance action and what harms may be suffered should this Court not enjoin the City from adding the election contest for District 2 to the ballot for the April 6, 2010 election.

Plaintiffs note that the City has been in continuous violation of Section 5 from the time it announced that a special election would be held in District 2 on a severely shortened election cycle. Some of the election changes created by the City have already happened.[1] The question remains whether, absent preclearance by Monday, April 5, 2010, at 2:00 p.m., the series of unprecleared changes referenced in the Complaint should be allowed to culminate in the District 2 election being submitted to voters at the polls.

---

[1] For example, any District 2 citizen, who is presently an unregistered voter but desires to vote in the District 2 election, cannot do so. Section 7-5-150 of the South Carolina Code of Laws provides that "[t]he registration books shall be closed thirty days before each election . . . and shall remain closed until such election shall have taken place . . . ." The March Public Notice published by the City informed the public that persons not already registered to vote would not be permitted to vote in this election.

1

When Plaintiffs' TRO motion was filed, the City's submission to the Department of Justice (hereinafter "DOJ") failed to highlight all of the changes brought about by the date set for the special election. Some of the changes were thus at that time "unsubmitted," and therefore not capable of achieving preclearance. The submission of April 1, 2010 may have resolved that problem.

On April 5, 2010, there will be an opportunity for the three judge panel to rule on the injunction, if it meets at that time. Plaintiffs' Memorandum in Support of the Temporary Restraining Order argued that the TRO standards could be seen in Section 5 cases as equivalent to traditional injunction standards—when the injunction was the relief ultimately sought. Plaintiffs now believe that the Temporary Restraining Order standards and the standards for a *Section 5 injunction* merge.

As the Court knows, there are many Section 5 enforcement cases, and many of those have highly convoluted facts. Plaintiffs seriously doubt, however, that there has ever been a case in which a jurisdiction, knowing its obligation to comply with Section 5, orders a special election that necessarily results in all of the strange changes in fundamental voting procedures at issue here and yet expects DOJ to grant preclearance in time for the election. To do so is an invitation for precisely the problems that have developed. Cases with very similar facts are unlikely to exist, forcing the Court to base its decision on general principles set out in other cases.

As of the time of this brief, the following are the possible scenarios:

1.      DOJ specifically identifies and preclears all the changes described in the Plaintiffs' Complaint and Memorandum in Support of the Temporary Restraining Order. Consequence: Section 5 case over.

2. DOJ specifically objects to any one of the changes set out in Paragraph 27 of the Plaintiffs' Complaint. Consequence: Temporary Restraining Order and/or Preliminary Injunction are the only viable options.

3. DOJ does nothing. Consequence: Temporary Restraining Order and/or Preliminary Injunction are the only viable options.

*DOJ objects.* While the City's position is that it will proceed without preclearance, it has not actually stated that if would proceed in the face of an actual objection. Plaintiffs assume that it would not. However, per chance the City argues that without an order restraining the election, it is compelled to proceed, the Temporary Restraining Order and/or Preliminary Injunction should issue. As the Defendant was on notice that it was enacting election law changes with little time to obtain preclearance, and as Plaintiffs have diligently sought to prevent the election from taking place without preclearance, Plaintiffs contend that it would be an abuse of discretion to allow the election to proceed in face of the objection. To do so would condone a clear violation of federal law.

*DOJ does nothing.* On March 31, 2010, this Court ordered the City specifically to identify for DOJ each and every change set out in Plaintiffs' Memorandum in Support of a Temporary Restraining Order, and to specifically inform DOJ that the City intends to go forward with or without preclearance. DOJ had already been informed of the urgency of the matter.

The regulations governing Section 5 specifically indicate that a request for expedited consideration may be made, but just as specifically, they indicate that the Department's expedited response cannot be assured. *See* 28 C.F.R. 51.34. It is very likely that the 60 day deadline for DOJ to respond was reset on March 30, 2010, March 31, 2010, and April 1, 2010, when the City supplemented its initial submission. *See* 28 C.F.R. 51.9 (60 days commences only

upon receipt of completed submission and perhaps again when the changes were clearly enumerated on April 1, 2010). Typically, DOJ evaluations of changes that clearly have an impact on ballot access, candidate access, and voter participation (as do the changes at issue here) can rarely be appropriately addressed in just a few days. The preclearance process envisions that the analyst or attorney in charge of the submission will solicit the comments of persons possibly affected by the changes—in this case, the residents of District 2, or others with knowledge.[2] *See* C.F.R. 51.38 (contacts). Under the circumstances, DOJ's failure to respond by April 5th cannot be seen as an implicit approval of the election going forward.

### **ARGUMENT REGARDING HARMS TO BE CONSIDERED**

As noted in our initial brief, *Clark v. Roemer*, 500 U.S. 646, 652-653 (1991), indicated that if Section 5 preclearance has not been obtained, Plaintiffs are entitled to an injunction. The Court repeated, with slight clarification, this message in *Lopez v. Monterey County*, 519 U.S. 9 (1996):

> In *Clark*, we left open the question whether a district court may ever deny a §5 plaintiff's motion for an injunction and allow a covered jurisdiction to conduct an election under an unprecleared voting plan. We suggested that '[a]n extreme circumstance might be present if a seat's unprecleared status is not drawn to the attention of the [covered jurisdiction] until the eve of the election and there are equitable principles that justify allowing the election to proceed.

*Id.* at 22-22 (quoting *Clark*, 500 U.S. at 654-55). The Court found no extreme circumstances in the case before it, which admittedly involved facts not very similar to those at issue here. It noted, however, that while the potential delay of an election is a serious issue, it does not "change the basic nature of the § 5 preclearance process." *Id.* at 23

---

[2] Ms. Bess DuRant, one of the attorneys for the plaintiffs, and Ms. Katharine Butler, were both called by an attorney in the Justice Department on Thursday afternoon, April 1, 2010, in response to the City's sending the pleadings, and other papers to the Department.

4

While *Monterey County* did not close the door to allowing unprecleared changes to be implemented in an election, the opening it left appears very narrow. "If a voting change subject to § 5 has not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting implementation of the change." *Monterey County*, 519 U.S. at 21. In the instant case, the City adopted an election procedure on its own (only later was the selection of the date affirmed by the South Carolina Supreme Court).[3] It was fully aware that it had very little time to obtain Section 5 preclearance. Indeed, the City attorney advised the Council that the special election should not be conducted as part of the April 6th election. Had the City followed his advice, it is unlikely that matter would have ever been before the State's high court.

The plaintiffs have been diligent in attempting to enforce the preclearance provision. The State Supreme Court's order was not available until March 24th. This Court's electronic filing system resulted in a short delay in filing the petition for a Temporary Restraining Order, but the City's attorney was informed that it was likely coming on March 26th. That this Court is considering the injunction request on the eve of the election is the fault of the City's proposing an election on such a short time-table, not any lack of diligence by the plaintiffs.

Moreover, while intervening events made the City preclearance job more difficult, had the original submission been all that the City sent to DOJ, Plaintiffs contend that the election would have been subject to injunction for failure to specify the *additional* changes brought about

---

[3] The involvement of the state courts obviously did complicate both the City's and the plaintiffs' ability to address the voting rights issue. Plaintiff Katharine I. Butler remains unconvinced that the South Carolina Supreme Court actually decided the meaning of the term "*next* regular election," in that no mention of it appears in the opinion, which seemed simply to assume that the April 6th election was "next." Plaintiffs raise this issue because of their concern that should preclearance occur, it may be seen as "approval" of scheduling "special elections" at the "next" general voting day, no matter how close—thus turning the validity of every such election into a constitutional case, *and* raising the possibility that a return to the normal provisions would be a change requiring preclearance.

by the selection of April 6th as the date for the election.  Apparently, the City focused on the need to submit these additional changes only after reading Plaintiffs' complaint.

On the basis of *Monterey County*, it appears clear that this Court should issue an injunction in this case.[4]  Note that the Supreme Court made no mention of the usual requirements for issuance of an injunction.  Recent cases have indicated that the usual requirement for an injunction do not apply.  *See, e.g., Barron v. N.Y City Bd. of Elections,* No. 08 CV 3839, 2008 WL 4809450 (E.D.N.Y. Nov. 4, 2008); *Boxx v. Bennett*, 50 F. Supp. 2d 1219 (M.D. Ala. 1999); *United States v. State of Louisiana*, 952 F. Supp. 1151 (W.D. La. 1997).

Section 5 cases in the lower federal courts after *Monterey County* indicate that the only questions are:  have there been changes subject to Section 5; have they been precleared; if not, what is the appropriate remedy?  While asking the third question does imply that some discretion exists, it appears to Plaintiffs that in post-*Monterey County* decisions involving unprecleared covered changes, most courts have concluded that an injunction should be granted.  *See, e.g., Barron, Boxx,* and *U.S. v. State of Louisiana*.

One case with facts reasonably close to instant case was *Henderson v. Harris,* 804 F. Supp. 288 (N.D. Ala. 1992),[5] in which a single judge granted a Temporary Restraining Order. The Democratic Party scheduled a special election to determine the party nominee for county

---

[4]   [The] congressional choice in favor of specialized review necessarily constrains the role of the three-judge district court.  On a complaint alleging failure to preclear election changes under § 5, that court lacks authority to consider the discriminatory purpose or nature of the changes
                                              ***
The three-judge district court may determine only whether § 5 covers a contested change, whether § 5's approval requirements were satisfied, and if the requirements were not satisfied, what temporary remedy is appropriate.

*Monterey County*, 519 U.S. at 23.

[5]  A copy of this case is attached hereto as **Exhibit A**.

commissioner in an overwhelmingly majority African-American district. The Defendant claimed that the election was being held pursuant an existing state statute governing special elections, and did not require preclearance.

The court concluded, however that the Regulations governing Section 5, 28 C.F.R. 51.17, specifically require submission of any changes in the practices to be followed in such election. The defendant also argued that there was no potential for discrimination because everyone involved was African-American, candidates and voters. The court, however, agreed with the plaintiff, who argued:

> [t]hat this might be the first time that the SDEC has ever called a special election and given the candidates and the electorate a mere two weeks notice. Therefore, because both of the candidates and a majority of the voters affected are black, the potential for discrimination is present..…  [t]he truncated pre-election period could result in low voter turnout and, consequently, less black voter participation in District Five as compared to voters in other districts or counties who enjoyed a much longer pre-election period. Viewed in this light, the SDEC's decision to call the special primary election for October 6, does carry with it the potential for racial discrimination. In a section 5 case, the court's inquiry ends here.

*Id*. at 293. The court then held that a Temporary Restraining order should issue.

Most of the cases that predated *Clark v. Roemer* and *Monterey County* granted equitable relief. In *Herron v. Koch*, 523 F. Supp. 167 (E. & S.D.N.Y. 1981), a three judge panel was confronted with a situation somewhat similar to the one at issue here. The City had made clearly covered election law changes, and had submitted them some time before they were anticipated to be implemented in an election. DOJ had requested additional information, which had been provided but DOJ had not yet ruled on preclearance. The court then examined the cases granting and not granting injunctions. *Id* at 173-74. In a ruling that foreshadowed the Court's pronouncement in *Monterey County*, it concluded:

> On the basis of all the circumstances of the present cases, we conclude that an injunction prohibiting the City from holding primary or general elections until

7

>such time as the Attorney General has acted or declined to act on the City's submission pursuant to s 5 (or until some other preclearance envisioned by s 5 is obtained) is the most appropriate way to give effect to s 5. Among the principal factors that lead us to this conclusion are the facts that the plaintiffs have done all in their power to preserve their rights under the Act, and that the City has not done all it could to comply with the Act.

*Id.* at 174.

The circumstances of the instant case cannot be squeezed through the narrow opening suggested by *Monterey County*. Plaintiffs have done everything feasible to prevent the changes brought about by the City's decision to hold a special election in conjunction with an election that was already in progress. They moved as quickly as possible, given the filing limitations they confronted by virtue of the rules governing electronic filing. Even before Plaintiffs filed their Temporary Restraining Order motion, the City's attorney was informed on March 26, 2010 that it would be sought. While Plaintiffs ascribe no bad faith to the City for its failure to include in its initial submission all the changes flowing from selecting the April 6th date for the special election, that responsibility is nevertheless the City's.

The confusion over the status of the District 2 election, the frantic efforts to obtain a more reasonable election schedule, as well as the problem of leaving Justice with just days before the election to make the preclearance decision are the product of the rush to have an election that could have been scheduled as early as June. As this would have given full effect to all of the State's notice, registration, and absentee balloting provisions, only the date would have required preclearance. All of the of the remaining problems would have gone away and the residents of District 2 would have had the same opportunity enjoyed by the remainder of the City's residence to participate in the first seriously contested election of the District's representative in more than 20 years.

8

Halting an illegal (because of the absence of preclearance) and faulty election on its eve produces more good than harm. With the election enjoined, the submission could then be withdrawn as moot, avoiding a possible objection. The election could be rescheduled with a full election schedule allowing all of the District's citizens an equal opportunity to participate in the first seriously contested election since many of the District's residents became old enough to vote.

The harm inflicted by moving forward clearly outweighs any harm from delaying the election until June. Under *Monterey County*, there must be some exigent circumstance that does not exist in this case. Otherwise, in the absence of preclearance, the election must be enjoined.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enjoin the City of Columbia from adding the election contest for District 2 to the ballot for the April 6, 2010 election, as it cannot conduct the election at that time without producing all of the changes enumerated in Plaintiffs' Complaint and Memorandum in Support of Motion for Temporary Restraining Order, none of which have been precleared under Section 5.

Plaintiff Katharine I. Butler joins in this brief.

*Signature page follows.*

9

        SOWELL GRAY STEPP & LAFFITTE, L.L.C.

By:   s/ Thornwell F. Sowell
      Thornwell F. Sowell (Fed. Bar ID: 4244)
      bsowell@sowellgray.com
      Robert E. Tyson, Jr. (Fed. Bar ID: 7815)
      rtyson@sowellgray.com
      Bess J. DuRant (Fed. Bar ID: 10603)
      bdurant@sowellgray.com
      1310 Gadsden Street
      Post Office Box 11449
      Columbia, South Carolina 29211
      Telephone: 803-929-1400
      Facsimile: 803-929-0300

**Attorneys for Plaintiffs Marvin Heller, Willie King, Jr., and Josette McDaniel**

By:   s/ Katharine I. Butler
      Katharine I. Butler
      106 Southwood Drive
      Columbia, South Carolina 29205
      803-765-2173
      *Admitted Pro Hac Vice*

**Attorney for Plaintiff Katharine I. Butler**

Columbia, South Carolina
April 2, 2010