IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Katharine I. Butler, Marvin Heller, Willie King, Jr., and Josette McDaniel, | C/A No. 3:10-CV-794-CMC-CHH-JFA |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| City of Columbia, South Carolina, | |
| Defendant, | |
| Durham E. Carter, | |
| Intervenor. | |

This matter is before the court on Plaintiffs' request for a permanent injunction ("PI"). Specifically, Plaintiffs[1] seek to enjoin Defendant, the City of Columbia ("City"), from proceeding with an April 6, 2010 election to the extent that election includes the vacant District 2 City Council seat ("Election to fill the District 2 Seat"). Plaintiffs allege that the manner in which the election is

---

[1] Plaintiffs include three represented individuals, Marvin Heller, Willie King, Jr., and Josette McDaniel ("Represented Plaintiffs"), as well as Katharine I. Butler ("Butler"), who is proceeding *pro se*. All three Represented Plaintiffs are African-Americans who are citizens of District 2. As Heller explained in his affidavit, he believes that if the election is allowed to go forward under the truncated schedule necessitated by holding the election on April 6, "the people of District 2, the majority of whom are African American, will not have had the same opportunity to participate in the election of their council person as residents of other districts had." Dkt. No. 15-7 at 3 (noting that the current schedule denies rights under the "old rules [which] include ample notice of the election and sufficient time for filing and campaigning" as well as "giv[ing] unregistered citizens the opportunity to register for the election, after it has been announced." King and McDaniel have filed affidavits agreeing with "what [Heller] said about the problems of holding the special election for District 2 so soon after Mr. Cromartie's resignation." Dkt. No. 15-8, 15-9. These concerns are more than sufficient to support standing. *See generally Allen v. Board of Elections*, 393 U.S. 544, 556-57 (1969) ("It is consistent with the broad purpose of the [VRA] to allow the individual citizen standing to insure that his city or county government complies with the section 5 approval requirements.").

being conducted constitutes a "change" in voting practices for which the City has failed to obtain preclearance as required by the Voting Rights Act, 42 U.S.C. § 1973c ("VRA").

For the reasons set forth below, the court grants a permanent injunction and enjoins the City from proceeding with the Election to fill the District 2 Seat on April 6 unless it obtains preclearance from the Attorney General of the United States. The scheduled April 6, 2010 election may proceed in all other respects.

**Background.** On March 9, 2010, Columbia City Council Member E.W. Cromartie, II, resigned his seat as City Council Member for District 2. At the time of Mr. Cromartie's resignation, a city-wide election had been scheduled for April 6, 2010, but the District 2 seat was not on the ballot. The deadline to register to vote in the April 6 election had passed, as had the deadline to file as a candidate. In addition, the period for absentee balloting had commenced.

On March 10, 2010, Columbia City Council adopted a Resolution (Resolution No. R-2010-027) authorizing publication of notice that the seat vacated by Mr. Cromartie would be filled as part of the April 6 regular election. *See* Dkt. No. 15-2 (TRO Motion Ex. A). As revealed by the resolution and attached notice, the original notice of election, stating what positions would be filled, was published on December 21, 2009, and again on January 3, 2010. The new notice advised that the period to file as a candidate for the vacant District 2 seat would open at 8:30 a.m. on March 15, 2010, and close at 12:00 p.m. on Friday, March 19, 2010. This new notice was published on or before March 14, 2010.

On March 10, 2010, the City submitted the resolution to the Attorney General of the United States ("Attorney General")[2] for preclearance under Section 5 of the VRA, requesting expedited consideration.[3] Dkt. No. 15-4 (TRO Motion Ex. B). On March 25, 2010, the City submitted additional information, including a South Carolina Attorney General opinion and decisions by a state circuit court and the Supreme Court of South Carolina. Dkt. No. 15-4 (TRO Motion Ex. C).[4] Following an initial hearing on Plaintiffs' motion for a temporary restraining order ("TRO Motion")

---

[2] The Attorney General of the United States ("Attorney General") is responsible for preclearance under the VRA. The Department of Justice ("DOJ") serves as the Attorney General's designee for this purpose. For ease of reference, the court refers to the Attorney General, recognizing that the actual contact with the Attorney General is, in fact, through the DOJ.

[3] The City is subject to Section 5, the preclearance provision of the VRA. Section 5 requires that the State of South Carolina and all political subdivisions, including the City of Columbia, submit to the Attorney General all changes in election law and practices prior to implementation. The Attorney General has sixty days after a completed submission to act. If the Attorney General "objects" during that sixty-day period, the changes may not be implemented. A "covered" jurisdiction has the alternative of seeking a declaratory judgment in the United States District Court for the District of Columbia that the change is without discriminatory purpose or effect. The City elected to take the more common "preclearance" route by submitting the resolution to the Attorney General. *See generally* 28 C.F.R. § 51 *et seq.*, Procedures for the Administration of Section 5.

[4] On March 16, 2010, the Attorney General of South Carolina issued a letter opinion stating that "[b]ased upon the face of [S.C. Code Ann. § 5-17-200(b)], . . . we cannot conclude that the election to fill the vacancy for Councilman Cromartie cannot be held on [April 6, 2010]." Dkt. No. 15-5 (TRO Motion Ex. D). The letter acknowledged, however, that "a statute may be constitutional on its face, but unconstitutional in its application." Addressing this concern, the letter stated: "In this instance, Section 5-7-200 provides for no notice. Thus a constitutional issue is raised in the application of the statute." *See also id.* at 3 ("[I]n this situation, a legitimate constitutional question of timing is apparent.").

At about the same time, a resident of District 2 sued in South Carolina Circuit Court in Richland County to set aside the decision to hold the Election to fill the District 2 Seat on April 6, 2010. The Circuit Court granted his request, but its decision was overturned by the South Carolina Supreme Court in an opinion issued March 24, 2010, allowing the City to continue with plans to include Seat 2 on the April 6, 2010 ballot. Dkt. No. 15-6 (TRO Motion Ex. E); *Denman v. City of Columbia*, Slip. Op. No. 26792 (S.C. Mar. 24, 2010).

3

on March 31, 2010, the City submitted additional information to the Attorney General on April 1, 2010.[5]

**Court's Authority.** Because this is an action under Section 5 of the VRA, this court requested, and the Chief Judge of the Fourth Circuit empaneled, a three-judge court.[6]

**Proceedings.** The complaint in this action as well as the TRO Motion were filed on March 30, 2010. The court immediately scheduled a hearing for 5:30 p.m. on March 31, 2010.[7]

Prior to the hearing, the City filed a response to the motion in which it conceded it had not yet received preclearance for the Election to fill the District 2 Seat. Dkt. No. 23. It noted, nonetheless, that it was seeking preclearance and had provided the Attorney General with supplemental information on March 25, 2010 and March 30, 2010, including advising the Attorney General of the filing of this action.

In its memorandum, the City stated that "[i]f the election to fill the vacancy in District 2 proceeds on April 6th without preclearance by the Attorney General or over an objection by the

---

[5] This packet included a cover letter which: (1) advised of the proceedings in this court, including a scheduled hearing for Monday, April 5, 2010, at 2:00 p.m.; (2) drew attention to the Plaintiffs' position as to the matters that constituted changes requiring preclearance; and (3) advised that the City intended to go forward with the election if it did not receive an objection from the Attorney General before polls opened and would, thereafter "seek post election preclearance." Dkt. No. 36. The packet attached the TRO Motion and its supporting memorandum and exhibits. *Id.*

[6] Any change for which preclearance has not been obtained is unenforceable and subject to being enjoined by a federal court of three judges, constituted as specified in 28 U.S.C. § 2284 and 42 U.S.C. § 1973c. An injunction is the only relief available from the three-judge court. The only court with subject matter jurisdiction to address the merits of whether a change is entitled to preclearance is the United States District Court for the District of Columbia. *Id.*

[7] Under 28 U.S.C. § 2284(b)(3), a single judge of this court may "grant a temporary restraining order" which shall "remain in force only until the hearing and determination [by the three judge court of the injunction application]."

Attorney General, the election should be set aside." Dkt. No. 23 at 1 (citing *N.A.A.C.P. v. Hampton County Election Commission*, 470 U.S. 166 (1985) (discussed *infra* n. 12)). The City also conceded that, had it failed to seek preclearance, an injunction would be appropriate but noted its ongoing efforts to obtain preclearance. The memorandum concluded by stating: "The City takes no position on the issuance of an injunction." Dkt. No. 23 at 2.

A motion to intervene was filed prior to the March 31, 2010 hearing. This motion, filed by Durham E. Carter, the successful litigant in the state Supreme Court, was granted without objection. *See supra* n. 4. At the TRO Motion hearing, Intervenor argued that there has been no "change" in voting practice subject to the preclearance requirements of the VRA.[8]

At the March 31, 2010 hearing, the City advised the court of recent communications with the Attorney General's designee in which the City had responded to questions and provided additional information relevant to preclearance. The City also advised the court that while it would not proceed with the Election to fill the District 2 Seat if the Attorney General interposed an objection, it had decided to proceed with the election if no response to the preclearance request was received prior to April 6.

The City agreed to provide additional information to the Attorney General on April 1, 2010. This included, most critically, the TRO Motion and attachments reflecting Plaintiffs' position as to the changes which required preclearance and the City's statement that it intended to proceed with

---

[8] As Carter's counsel acknowledged during the March 31, 2010 hearing, the South Carolina Supreme Court recognized that a distinct challenge might be made under the Voting Rights Act but that such a challenge was an issue for the federal courts. It is that challenge which is now before this court.

the Election to fill the District 2 Seat if no decision was received from the Attorney General by the morning of the scheduled election.

Given the possibility that the matter would resolve without the necessity for court intervention, and in light of the City's agreement to supplement its preclearance request, the court declined to enter a TRO on March 31, 2010. The court did, however, schedule a second hearing for April 5, 2010 at 2:00 p.m. to address the request for entry of a TRO.

On Friday, April 2, 2010, the court informed counsel by electronic mail that all three judges were available for the hearing on Monday and suggested conversion of the motion to a motion for a preliminary injunction. All parties agreed to this course of action.

On Friday, April 2, 2010, Plaintiffs and Intervenor filed memoranda addressing their respective positions as to the harms the court should consider. Dkt. No. 31, 32. As this was Intervenor's first memorandum, he also included argument as to his position that the procedures being followed did not involve a change requiring preclearance.

As of 2:00 p.m., Monday, April 5, 2010, no preclearance decision had been received from the Attorney General. The three-judge court, therefore, held a hearing on Plaintiffs' motion for preliminary injunction. At this hearing all counsel agreed that the motion for preliminary injunction should be converted to a request for permanent injunctive relief.

**Injunction standard.** The following standard governs a three-judge district court's decision whether to grant an injunction in a VRA Section 5 case: The court "may determine only whether Section 5 covers a contested change, whether Section 5's approval requirements were satisfied, and if the requirements were not satisfied, what temporary remedy, if any, is appropriate." *Lopez v. Montgomery County*, 519 U.S. 9, 23 (1996).

I.    **Are the Contested Changes Covered by Section 5?**

The United States Supreme Court has defined the changes subject to Section 5 very broadly to include any change which alters election law or practices in even a minor way. *Allen v. Bd. of Elections*, 393 U.S. 544, 566 (1969). Consistent with *Allen*, the regulations governing Section 5 state:

> Any change affecting voting, even though it appears to be minor or indirect, returns to a prior practice or procedure, ostensibly expands voting rights, or is designed to remove the elements that caused objection by the Attorney General to a prior submitted change, must meet the Section 5 preclearance requirement.

28 C.F.R. § 51.12.

As the United States Supreme Court explained in *Presley v. Etowah Comm'n*, 502 U.S. 491 (1992):

> We agree that all changes in voting must be precleared and [that] the scope of § 5 is expansive within its sphere of operation. That sphere comprehends all changes to rules governing voting, changes effected through any of the mechanisms described in the statute. Those mechanisms are any "qualification or prerequisite" or any "standard, practice, or procedure with respect to voting."

*Id.*, 502 U.S. at 501-02 (citations omitted).

Plaintiffs have made a strong showing that the City's Election to fill the District 2 Seat involves changes that affect voting rights. This is particularly true as to the following three changes:

1.    The notice of election, ordinarily ninety days in advance of a general city election (Columbia, S.C., Code § 6-6(b) (1979)) and a minimum of sixty days in advance of a special elections (S.C. Code Ann. § 7-13-35 (2009)), was reduced to twenty-two days (notice posted March 14, election scheduled April 6, 2010).

7

2. The filing period, ordinarily thirty days, was reduced to four and a half days. *See* Dkt. No. 15-1 at 9; Dkt. No. 15-2 at 2.

3. The provisions which normally advise voters that they may register to vote up to thirty days in advance of the election were necessarily eliminated. *See* S.C. Code Ann. § 7-5-150 (2009) (stating that "[t]he registration books shall be closed thirty days before each election"); S.C. Code Ann. § 7-13-35 (2009) (requiring, *inter alia*, that notice of the election include notice of the deadline for registration).

In addition to the above, Plaintiffs note that the Election to fill the District 2 seat was added to an already in-progress regular election (in that the period for absentee balloting had opened).

The City concedes that preclearance is required. Intervenor, on the other hand, argues that there has been no change subject to the VRA's preclearance requirement. This argument rests on the theory that the "changes" alleged by Plaintiffs are merely the natural consequence of application of Section 5-7-200(b) which the South Carolina Supreme Court ("Supreme Court") construed in *Denman*. Because Section 5-7-200(b) was, itself, precleared and in force and effect, Intervenor argues that no further preclearance is required.

The court disagrees. That an alleged change is the result of a state court decision does not protect it from Section 5's preclearance requirements. *See Riley v. Kennedy*, 553 U.S. 406 (2008) ("We have also stated that the preclearance requirement encompasses 'voting changes mandated by order of a state court'") (quoting *Branch v. Smith*, 538 U.S. 254, 262 (2003)); *Hathorn v. Lovorn*, 457 U.S. 255 (1982) ("the presence of a court decree does not exempt the contested change from section 5"). Here, the Supreme Court's interpretation of Section 5-7-200(b) as controlling resulted

8

in changes to the application of other statutes and practices.[9] For example, although S.C. Code Ann. § 7-13-35 (2009) requires sixty days' advance notice for a special election and Columbia, S.C., Code § 6-6(b) requires ninety days' notice for a general election, here, the notice period regarding the addition of the District 2 seat to the ballot was reduced to twenty-two days. *See supra* at 7-8 (addressing other statutes affected). These are changes from the baseline as to those statutes and practices.[10] A change from the baseline requires preclearance under the VRA.[11] For these reasons, the court concludes that the contested changes are covered by the VRA.

## II. Have Section 5's Approval Requirements Been Satisfied?

It is undisputed that no preclearance decision has been issued by the Attorney General. Thus, Section 5's approval requirements have not been met.

## III. What Remedy, If Any, Is Appropriate?

In determining what temporary remedy, if any, is appropriate, the court focuses on the harm which will result if the election proceeds without preclearance versus the harm which will result if the court enjoins the election. As explained in *Clark v. Roemer*, 500 U.S. 646, 652-653 (1991), the

---

[9] Section 5-7-200(b) is, seemingly, in conflict with several other statutes. The Supreme Court acknowledged that it should, where possible, reconcile the apparently conflicting statutes but, ultimately, held that the requirements of Section 5-7-200 overrode the rights in the other statutes because Section 5-7-200 was the more specific statute.

[10] The United States Supreme Court recently held that, "In order to determine whether an election practice constitutes a 'change,' . . . we compare the practice with the covered jurisdiction's 'baseline.'" *Riley v. Kennedy*, __ U.S. __, 128 S. Ct. 1970, 1982 (2008). The Court defines a covered jurisdiction's baseline as "the most recent practice that was both precleared and 'in force or effect'– or, absent any change since the jurisdiction's coverage date, the practice that was 'in force or effect' on that date." *Id.*

[11] There is no suggestion that the City Code provision or any of the statutes involved had not been precleared and in force and effect as to their normal application. Thus, the cited code provision and statutes provide a baseline as to their various subject matters.

9

normal remedy for failure to obtain preclearance is an injunction. The Court repeated this message, with slight clarification, in *Lopez*:

> In *Clark*, we left open the question whether a district court may ever deny a § 5 plaintiff's motion for an injunction and allow a covered jurisdiction to conduct an election under an unprecleared voting plan. We suggested that "[a]n extreme circumstance might be present if a seat's unprecleared status is not drawn to the attention of the [covered jurisdiction] until the eve of the election and there are equitable principles that justify allowing the election to proceed."

*Lopez*, 519 U.S. at 22 (quoting *Clark*, 500 U.S. at 654-55). Finding no extreme circumstances presented, the *Lopez* Court noted that while the potential delay of an election is a serious issue, it does not "change the basic nature of the § 5 preclearance process." *Id.* at 23.

**Election Allowed to Proceed.** If the election is allowed to proceed without preclearance, the District 2 seat will be filled quickly and at no added cost. This will potentially provide the citizens of District 2 a representative during a period of two to four months in which they would otherwise lack representation. If preclearance is later denied, the results of the election would likely be set aside.[12] It is also possible that the election results would be set aside for lack of preclearance

---

[12] *See NAACP v. Hampton County Election Comm'n*, 470 U.S. 166, 181-83 (1985) ("[I]t is appropriate . . . for the District Court to enter an order allowing appellees 30 days in which to submit these changes to the Attorney General for approval . . . . If appellees fail to seek this approval, or if approval is not forthcoming, the results of the . . . election should be set aside. If, however, the Attorney General determines that the changes had no discriminatory purpose or effect, the District Court should determine, in the exercise of its equitable discretion, whether the results of the election may stand.") (citations omitted); *see also Perkins v. Matthews*, 400 U.S. 379, 396-97 (1971) ("[I]n determining the appropriate remedy, other factors may be relevant, such as the nature of the changes complained of, and whether it was reasonably clear at the time of the election that the changes were covered by § 5. . . . [W]e think the question of the appropriate remedy is for that court to determine, in the first instance, after hearing the views of both parties.") (citations omitted).

even if approval of the changes is obtained after the election. *Supra* n. 12. What is certain, however, is that there would be period of uncertainty regarding whether the election was valid.[13]

**Election Enjoined.** If the election is enjoined, the citizens of District 2 will be without a representative for two to four months when they otherwise might have had representation. If this court acts now to enjoin the April 6, election, a proper election which would not be subject to challenge under the VRA could be scheduled for summer 2010. Not enjoining the April 6 election means losing this window of opportunity. Thus, while enjoining the election results in a short period in which the residents of District 2 would be without representation, it avoids the substantial risk of a lengthy period in which the validity of an election is in doubt, and ensures a valid election within two to four months. With such an election, there would be no changes to other practices and procedures because citizens of Distict 2 who wish to register to vote in the election would be able to do so; candidates who are now precluded from filing would be able to file (and any who have currently filed could refile); absentee ballots would be correct; voters in District 2 would have a better opportunity to evaluate the candidates' positions on important issues; and the rights of potential and registered voters would be protected.

**Conclusion as whether injunctive relief, if any, is appropriate.** This court concludes that permanent injunctive relief enjoining the election is appropriate. This is based on a finding that irreparable harm likely would flow from a denial of injunctive relief.[14] The short-term loss of

---

[13] It is also possible that a later determination that the election was invalid would draw into question any intervening City Council decisions decided by a one-vote margin.

[14] As Justice Kennedy concluded in *Lucas v. Townsend*, 486 U.S. 1301, 1305 (1988), "irreparable harm likely would flow from a denial of injunctive relief." This is because "[p]ermitting the election to go forward would place the burdens of inertia and litigation delay on those whom the statute was intended to protect, despite their obvious diligence in seeking an adjudication of their rights prior to the election." *Id.*

representation for District 2 residents is outweighed by the disruption which would be caused by a substantial period of uncertainty as to the validity of the election if the election is allowed to proceed without preclearance. Most importantly, the court finds the benefit of enjoining the election now–so that an election not subject to VRA challenge may be held within two to four months–weighs in favor of granting the injunction.

Accordingly, the court grants Plaintiffs' request for permanent injunctive relief and orders that the City not include the Election to fill the District 2 Seat in the April 6, 2010 election unless preclearance is obtained. The Clerk shall forthwith enter judgment accordingly.

Clyde H. Hamilton
Senior United States Circuit Judge

Joseph F. Anderson, Jr.
United States District Judge

Cameron McGowan Currie
United States District Judge

April 5, 2010
Columbia, South Carolina